UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KIRSTY J. DOWNING,

        Plaintiff,

v.

LIFE TIME FITNESS, INC.,

        Defendant.

_____/

Case No. 10-11037

Honorable Patrick J. Duggan


**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_December 28, 2010.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

In this action, Kristy Downing ("Plaintiff") alleges that Life Time Fitness, Inc.

("Defendant") and its employees violated a number of state and federal laws, based on

events occurring in connection with her use of Defendant's health clubs. Before the

Court are Plaintiff's Motion for Preliminary Injunction and Plaintiff's Motion to Strike.

Both parties have requested sanctions, and the Court also considers these requests. The

Court heard oral argument on December 9, 2010, and for the reasons stated below, denies

both Motions and denies the parties' requests for sanctions.

**I. Factual and Procedural Background**

Defendant operates a number of health clubs, including one in Canton Township, Michigan. Only club members are permitted to use Defendant's facilities, and members pay a monthly fee for their privileges. In August 2008, Plaintiff joined Defendant's club by signing both a Member Usage Agreement and General Terms Agreement. *See* Compl. Ex. A.[1] The Usage Agreement provides:

> Life Time Fitness may terminate my membership or any member at any time for failure to comply with any of the rules and regulations adopted by Life Time Fitness or for conduct Life Time Fitness determines to be improper or contrary to the best interests of Life Time Fitness.

*Id.* at 5. Plaintiff began using Defendant's facilities on a regular basis, and in September 2008, purchased a fitness examination and consultation from Defendant. Compl. ¶ 13. Plaintiff claims that she received "legitimate results" from this examination. *Id.*

Plaintiff claims that two of Defendant's employees contacted her via text messages on her mobile phone in March 2009. Jeff Morton allegedly invited her to play basketball at Defendant's club on a Saturday evening. Compl. Ex. C at 4. Plaintiff further alleges that a few days later, an employee identified only as "Eboni" contacted her. *Id.* Plaintiff replied to both employees, questioning their sincerity, and claims that the following morning, the messages had been removed from her phone. *Id.* Plaintiff reported this incident to the Canton Police on March 7, 2009. *Id.* The police contacted Eboni, who explained that Plaintiff had inquired about joining a basketball league, and promised to

_____

[1] Unless otherwise specified, the Complaint referred to throughout this Opinion and Order is Plaintiff's Third Amended Complaint, filed pursuant to leave of the Court on September 8, 2010.

cease further contact. Compl. Ex. B. Canton Police closed the investigation, finding that no crime had been committed. *Id.* Plaintiff alleges that since then, Morton has "gone out of his way to appear in Plaintiff's line-of-sight when she is at Defendant's center." Compl. ¶ 12.

In approximately October 2009, Vincent Orsini became the General Manager of Defendant's Canton health club. Plaintiff claims that Orsini encouraged and enabled Defendant's employees to harass and intimidate her. *Id.* ¶ 8. Plaintiff alleges that Defendant's employees made degrading comments to her, laughed at her, made "sarcastic inquiries" as to how she was doing, forced and staged interactions with her, and used devices to observe her activities. *Id.* Plaintiff further alleges that because she is African-American, Defendant specifically recruited African-American employees to engage in these behaviors in order to mask discriminatory intent. *Id.* ¶ 9.

On November 3, 2009, Plaintiff purchased two additional fitness exams from Defendant. She alleges that Defendant provided "illegitimate results" for these exams, recommending that she consume 3,500 calories per day and exercise at a higher heart rate to achieve her weight loss goals. *Id.* ¶ 14-15. Plaintiff complained to Orsini about these results and demanded a refund. She claims that Orsini refused. *Id.* ¶ 16.

On November 20, 2009, Plaintiff filed suit against Defendant in the Small Claims Division of Michigan's 35th District Court. She alleged that Defendant harassed her by providing "fraudulent fitness advice so she would gain weight," having employees and others "stalk her," and having staff "aggressively greet her so as to intimidate her."

Compl. Ex. H.

On December 3, 2009, Plaintiff entered the Canton Township club, and claims that

Jamie Kazzanowski, an employee at the front desk, sarcastically yelled to her, "have a

nice workout!" Compl. ¶ 18. Plaintiff alleges that she asked Kazzanowski not to speak

with her again. *Id.* Defendant claims that Plaintiff pointed her finger at Kazzanowski and

said in a threatening manner, "don't talk to me when I come into the club . . . you know

what I mean." Def.'s Resp. Mot. Prelim. Inj. 3.

Plaintiff alleges that throughout December 2009, Defendant's employees continued

their sarcastic behavior, asking her questions such as how she was doing, or if she was

"hanging on by a thin thread." Compl. ¶ 19. On December 20, 2009, Plaintiff sent Orsini

an e-mail containing vague allegations of racially discriminatory behavior by Defendant's

staff. Compl. Ex. I. The only specific instance of misconduct mentioned was a towel

attendant's speaking to Plaintiff when he was directed not to do so. *Id.* On January 4,

2010, Plaintiff contacted another employee, Connie Scaparo, and asked Scaparo not to

speak to her. Def.'s Resp. Mot. Prelim. Inj. Ex. J. Plaintiff also asked Scaparo to tell

Defendant's yoga instructors not to walk over to her and instruct her during classes. *Id.*

On February 17, 2010, the 35th District Court entered a scheduling order in this

action. That same day, Defendant elected to terminate Plaintiff's membership pursuant to

the terms of the Membership Usage Agreement. Defendant sent Plaintiff a letter

explaining that her conduct was improper or contrary to Defendant's best interests. The

letter cited threatening behavior toward Defendant's employees and unsubstantiated

claims of harassment and stalking.  Def.'s Resp. Mot. Prelim. Inj. Ex. D.  Accordingly,

Defendant terminated Plaintiff's membership effective February 17, 2010, refunding the

unused portion of her monthly membership fee.  *Id.*

Plaintiff responded in an e-mail to Orsini on February 19, 2010, asserting that

because of pending litigation, Defendant could not terminate her membership.  Def.'s

Resp. Mot. Prelim. Inj. Ex. K.  Defendant's counsel responded via mail and e-mail in a

message dated February 19, 2010, stating in part:

> Your pending lawsuit in the 35th District Court has no bearing on whether or
> not Life Time Fitness can terminate your membership pursuant to the terms
> of your Membership Usage Agreement, which you agreed to when you
> joined the club.  Your Member Usage Agreement clearly provides that Life
> Time Fitness may terminate your membership at any time "for conduct Life
> Time Fitness determines to be improper or contrary to the best interests of
> Life Time Fitness."  Mr. Orsini's letter clearly sets forth the factual basis
> (your improper conduct) and the contractual basis (the involuntary
> termination provision in your Member Usage Agreement) for Life Time's
> termination of your membership.
>
> Contrary to your characterization of it, Mr. Orsini's letter was not a
> "request" to stop using the club.  Your membership has been terminated.
> You are no longer permitted to enter Life Time's premises as a member,
> guest or in any other status.  You are no longer a business invitee of Life
> Time, such that your entry onto its premises will constitute trespassing.  If
> you attempt to use the premises, you will be denied access and requested to
> leave.  While your email states that you have "no intention of honoring"
> your termination, I ask that you kindly and carefully reconsider your threat
> to continue using the club, so as to avoid any issues related to your attempt
> to obtain access to any Life Time Fitness club.

Def.'s Resp. Mot. Prelim. Inj. Ex. L at 1-2.  Plaintiff entered Defendant's Canton club the

following day, February 20, 2010.  After refusing Defendant's requests to leave, Plaintiff

was arrested by Canton Police and ticketed for trespassing.  Compl. Ex. O.

Plaintiff received an e-mail from "lifetimefitness@emails.lifetimefitness.com" on February 26, 2010, stating:

> Join Life Time Fitness now and receive 4 personal training sessions - 2 sessions when you sign up + 1 session at 6 months + 1 session at 12 months. Plus, pay no enrollment fee now through Sunday, February 28th.

Def.'s Resp. Mot. Prelim. Inj. Ex. N. The signature at the end of the e-mail stated that it was from Anthony Vitale, Member Advisor of Defendant's Canton club. *Id.* Plaintiff returned to the club on February 27, 2010 and filled out a membership application. One of Defendant's employees realized that Plaintiff was in the building and asked her to leave immediately. She refused, and was arrested by Canton Police again for trespassing. *Id.* The charge was dismissed due to the possibility that Defendant inadvertently scheduled the appointment, and Defendant stated that it was working to remove Plaintiff from its e-mail lists. *Id.*

On Sunday, February 28, 2010, Plaintiff sent an e-mail to Defendant's counsel indicating her intent to join Defendant's club in Novi, Michigan. Later that day, Plaintiff entered the Novi club. Sandy Schmidt, the general manager of the Novi club, asked her to leave. Plaintiff left the facility, and responded in a letter to Defendant's counsel dated March 12, 2010, demanding that Defendant cease and desist from excluding her from its clubs. Compl. Ex. S. She also sent an e-mail to Vitale and Defendant's counsel that day, stating her intention to enter the club around 6 or 7 p.m. to purchase a membership. Compl. Ex. T. Defendant's counsel replied, stating that any attempt to enter the club would be considered a trespass, and law enforcement authorities would be contacted.

Def.'s Resp. Mot. Prelim. Inj. Ex. S.  Later that day, Plaintiff attempted to enter the

Canton club, and was again arrested by Canton Police.

Plaintiff removed the case to Wayne County Circuit Court to seek injunctive relief,

and Defendant removed the case to this Court on March 15, 2010, on grounds that the

Complaint presented a federal question.  Plaintiff moved to remand, and this Court denied

her motion in an Opinion and Order dated July 8, 2010.

Plaintiff's Complaint alleges the following claims: (1) racial and gender

discrimination in violation of the Elliott-Larsen Civil Rights Act, Michigan Compiled

Laws § 37.2101 *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 2000a(a), and Michigan common

law; (2) false arrest, false imprisonment, and malicious prosecution; (3) intentional and

reckless infliction of emotional distress; (4) negligence; (5) defamation and invasion of

privacy; (6) breach of contract; (7) fraud; (8) violations of Plaintiff's freedom of

association under the First Amendment to the United States Constitution and Plaintiff's

Due Process rights under both the United States and Michigan Constitutions; and (9) civil

stalking.  Plaintiff seeks declaratory and injunctive relief, actual and enhanced damages of

$631,550, and reasonable attorney's fees and costs.

Plaintiff moved for a preliminary injunction on August 5, 2010, seeking to enjoin

Defendant, its employees, and agents from (1) canceling Plaintiff's membership or

denying her membership to its facilities; (2) refusing to contract with Plaintiff until the

resolution of this case; (3) pursuing any complaint of criminal trespass against Plaintiff;

and (4) harassing, stalking, defaming, threatening, or discriminating against Plaintiff.

Defendant responded on September 20, 2010, and Plaintiff moved to strike the response

on September 22, 2010. Plaintiff also requested sanctions against Defendant. Defendant,

in responding to the Motion to Strike, seeks sanctions against Plaintiff.

## II. Plaintiff's Motion for Preliminary Injunction

Plaintiff bears the burden of establishing her entitlement to a preliminary injunction.

*Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Preliminary injunction is a drastic

and extraordinary remedy that should not be extended to doubtful cases or those falling

outside well-established principles of law. *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th

Cir. 2001). Courts weigh four factors in determining whether to issue a preliminary

injunction: (1) whether the plaintiff has established a substantial likelihood or probability

of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff;

(3) whether issuance of the injunction would cause substantial harm to others; and (4)

whether the public interest would be served by granting injunctive relief. *Winnett v.*

*Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010). Federal Rule of Civil Procedure 52

requires the Court to make specific findings concerning each of these four factors, unless

fewer are dispositive of the issue. *Bonnell*, 241 F.3d at 809.

## A. Substantial Likelihood of Success on the Merits

Plaintiff contends that she is likely to succeed on the merits because (1) Defendant

terminated her membership in bad faith, and (2) Defendant terminated her membership in

retaliation for claims of harassment.

### 1. Bad Faith Termination of Membership

Plaintiff asserts that she is likely to succeed on her breach of contract claim because Defendant terminated her membership in bad faith.  The Court disagrees.  Plaintiff points to the timing of the 35th District Court's scheduling order, entered on the same date her membership was terminated.  She contends that the close proximity of these events demonstrates Defendant's bad faith.  Plaintiff fails to explain how a procedural detail such as a scheduling order was significant enough to prompt termination of her membership.  Plaintiff filed this action on November 20, 2009, about three months before her membership was terminated.  Plaintiff has not alleged that Defendant prevented her from entering its clubs during this three-month period, despite the pending litigation.  It is implausible to assert that the scheduling order provided any significant reason for termination of Plaintiff's membership, given Plaintiff's use of Defendant's club for nearly there months while litigation was pending.

Plaintiff asserts that the parties' contract cannot reasonably provide Defendant the right to terminate a membership based on mere preservation of legal rights.  Even if this assertion were correct, Plaintiff did not simply file a lawsuit in response to Defendant's alleged actions.  She continued to contact Defendant's employees, making vague allegations of further harassment and racial discrimination in an e-mail to Orsini.  *See* Compl. Ex. I.  In this message, Plaintiff reminded Orsini of the pending litigation and that she had filed police reports against several of Defendant's employees.  The parties' contract unambiguously provided Defendant with discretion in identifying conduct contrary to its best interests.  Plaintiff has failed to establish that Defendant's decision to

terminate her membership constituted a breach of that contract.

### 2. Retaliation for the Exercise of Civil Rights

Plaintiff contends that she is likely to succeed on her civil rights retaliation claim.

Plaintiff asserts there can be no question that her lawsuit caused the termination, as

Defendant's letter stated that her membership was terminated because of "unsubstantiated

claims of harassment and stalking against various Life Time employees." Plaintiff,

however, continued to make allegations against Defendant's employees well after filing

her lawsuit. Her December 20, 2009 e-mail to Orsini alleged "racially motivated"

behavior but provided few specifics. Compl. Ex. I. The only specific conduct she

identified was a towel attendant's speaking to her. *Id.* Because Plaintiff made these

allegations after filing suit but prior to termination of her membership, they could have

been the "unsubstantiated claims" referred to by Defendant's letter. Furthermore,

Plaintiff's membership was not terminated until three months after she filed suit. Given

the ongoing contact between the parties, the timing of these events alone is insufficient to

establish retaliation. Plaintiff has therefore failed to demonstrate that she is substantially

likely to succeed in her retaliation claim.

## B. Irreparable Harm

Plaintiff contends that her exclusion from a public place without due process results

in irreparable reputational harm. She relies on *Wisconsin v. Constantineau*, 400 U.S. 433,

91 S. Ct. 507 (1971), but the case is clearly distinguishable. In *Constantineau*, the chief

of police posted a notice in all of a city's liquor stores forbidding sales to the plaintiff. *Id.*

at 435, 91 S. Ct. at 517-18.  The Supreme Court noted that the posting was a public

"stigma" or "official branding," and held that a person must have the opportunity to

defend himself to prevent oppressive results.  *Id.* at 437, 91 S. Ct. at 510.  Plaintiff alleges

that Defendant seeks to "blacklist" her from its facility, but this has not been

communicated to the general public in any way.  Defendant's refusal to readmit Plaintiff

as a member results in neither reputational harm nor a due process violation.

Plaintiff claims that her trespass arrests violated her due process rights, relying on

*Bouie v. Columbia*, 378 U.S. 347, 363, 84 S. Ct. 1697 (1964).  In *Bouie*, A South Carolina

statute prohibited entry onto another's property after being given a notice forbidding such

entry.  *Id.* at 349 n.1, 84 S. Ct. at 1700.  The petitioners were students who entered into a

restaurant without receiving a warning.  *Id.* at 348, 84 S. Ct. at 1700.  They were

subsequently arrested and convicted under the statute.  *Id.* at 349, 84 S. Ct. at 1700.  The

Supreme Court held that the convictions violated due process, as the statute did not

prohibit the petitioners' conduct.  *Id.* at 363, 84 S. Ct. at 1707.  Unlike the students in

*Bouie*, Plaintiff had ample notice that Defendant had forbidden her from entering its club.

She has failed to demonstrate a violation of her due process rights.

Although the loss of First Amendment freedoms for even a minimal amount of time

constitutes irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690

(1976), Plaintiff has failed to show any such deprivation.  Plaintiff argues that the Canton

Police trespass notice prohibits her from obtaining a membership until February 2011, in

violation of her First Amendment freedom of association.  The First Amendment protects

the freedom of association in two distinct senses. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544, 107 S. Ct. 1940, 1945 (1987). First, it protects against unjustified government interference with an individual's choice to enter into and maintain intimate or private relationships. *Id.* Second, it protects an individual's right to associate for the purpose of engaging in protected speech or religious activities. *Id.* The Court concludes that the Canton Police trespass notice does not restrict Plaintiff's freedom of association in either sense. Plaintiff has not demonstrated that membership in Defendant's health club entails the sort of intimate and private relationship that is afforded First Amendment protection. The freedom of association typically does not apply to large business enterprises. *Roberts v. United States Jaycees*, 468 U.S. 609, 620, 104 S. Ct. 3244, 3251 (1984). Plaintiff also has not alleged that she seeks to join Defendant's club to engage in protected speech or religious activities. The Court concludes that Plaintiff has not established a violation of her First Amendment freedom of association. Thus, she has failed to establish irreparable harm.

Defendant correctly notes that a plaintiff's harm "is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). "[A]n injunction generally should not issue if there is an adequate remedy at law." *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992). Plaintiff has asserted claims for damages, and the Court is unaware of any reason that damages would be inadequate to compensate her for her alleged injuries. Plaintiff essentially seeks specific performance of her membership contract, but specific

performance is not granted where damages would be an adequate remedy. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 584 (6th Cir. 2007).

## C. Substantial Harm to Others

The third factor of the preliminary injunction analysis, whether the injunction would cause substantial harm to others, weighs against granting injunctive relief. Plaintiff's claims involve seemingly innocent employee behavior that she alleges was carried out with sarcastic and demeaning intent. It may be exceedingly difficult for Defendant to distinguish legitimate conduct from the allegedly degrading conduct described by Plaintiff. Reinstatement of Plaintiff's membership would thus expose Defendant to an unusual risk of additional claims. Absent a compelling reason to reinstate Plaintiff's membership, the Court finds that this risk of harm weighs in Defendant's favor.

Plaintiff argues that Defendant would benefit from the proposed injunction, as its revenue would increase due to Plaintiff's monthly membership fee of $59.99. It would be plainly unreasonable to conclude that this membership fee outweighs the risk of new claims, as Plaintiff seeks damages of $631,550 based on her existing claims. The Court cannot justify requiring Defendant to reinstate Plaintiff's membership at this time; such action would invite additional claims, yet provide Defendant with little benefit.

## D. Public Interest

Plaintiff asserts that the public interest favors granting injunctive relief, as First Amendment freedoms are at issue. For the reasons stated above, the Court has concluded that Plaintiff has established no First Amendment violation. The public interest does not

require granting the proposed preliminary injunction.

**E. Conclusion**

All four factors considered in deciding whether to grant a preliminary injunction weigh in Defendant's favor. Plaintiff is not substantially likely to prevail in her claims, and has failed to establish irreparable harm. Defendant would be substantially harmed by the proposed injunction, and there is no public interest in the matter. Accordingly, the Court denies Plaintiff's Motion for Preliminary Injunction.

### III. Plaintiff's Motion to Strike

Plaintiff has moved to strike Defendant's Brief in Response to Plaintiff's Motion for Preliminary Injunction. She argues that the Brief failed to comply with E. D. Mich. LR 7.1(d)(3)(A), which provides: "The text of a brief supporting a motion or response, including footnotes and signatures, may not exceed 20 pages." The text of Defendant's Brief, excluding the brief's cover page, statement of issues, and table of authorities, totaled twenty pages. The twenty-first page contained the signature. There is no indication that Plaintiff was disadvantaged by the signature overlapping onto a twenty-first page. The Court does not require such hyper-technical compliance with the Local Rules, and certainly will not strike a party's motion on such a basis.

Plaintiff also argues that Defendant unnecessarily referred to police reports she filed against her relatives. Plaintiff claims that these reports are irrelevant, while Defendant contends that they demonstrate a pattern of wild allegations. The Court need not consider these matters, as it has concluded that Plaintiff's Motion for Preliminary Injunction must

be denied on other grounds.  This portion of the Motion to Strike is therefore moot.

## IV. The Parties' Requests for Sanctions

Plaintiff's Motion to Strike requested sanctions pursuant to Federal Rule of Civil Procedure 11, arguing that Defendant maliciously raised allegations that Plaintiff had previously made against family members.  Defendant sought sanctions in response, asserting that Plaintiff's Motion was filed to increase the cost of litigation.  The "safe harbor" provision of Federal Rule of Civil Procedure 11(c)(2) states that a motion for sanctions must be made separately from any other motion, and must not be filed with the court until twenty-one days after service on the opposing party.  Neither Plaintiff nor Defendant has presented evidence of compliance with this provision.  The Court therefore denies both parties' requests for sanctions.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

copies to:

Kristy J. Downing, Esq.
Anthony J. Kostello, Esq.