UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY J. DOWNING,

      Plaintiff,

                                Case No. 10-11037

v.

                                Honorable Patrick J. Duggan

LIFE TIME FITNESS, INC.,

      Defendant.

_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_May 24, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

In this action, Kristy Downing ("Plaintiff") alleges that Life Time Fitness, Inc.

("Defendant") and its employees violated state and federal laws in connection with her use

of Defendant's health clubs.  Presently before the Court is Defendant's motion to dismiss

or for summary judgment, filed on February 28, 2011 pursuant to Federal Rules of Civil

Procedure 12(b)(6) and 56.  The matter has been fully briefed, and the Court heard oral

arguments on May 17, 2011.  For the reasons stated below, the Court grants Defendant's

motion for summary judgment.

**I. Factual and Procedural Background**

Defendant operates a number of health clubs, including a club in Canton Township,

Michigan.  Only club members are permitted to use Defendant's facilities, and members pay a monthly fee for their privileges.  In August 2008, Plaintiff joined Defendant's club by signing both a Member Usage Agreement and General Terms Agreement.  *See* Compl. Ex. A.[1]  The Usage Agreement provides:

> Life Time Fitness may terminate my membership or any member at any time for failure to comply with any of the rules and regulations adopted by Life Time Fitness or for conduct Life Time Fitness determines to be improper or contrary to the best interests of Life Time Fitness.

*Id.* at 5.  Plaintiff began using Defendant's facilities on a regular basis, and in September 2008, purchased a fitness examination and consultation from Defendant.  Compl. ¶ 13. Plaintiff claims that she received "legitimate results" from this examination.  *Id.*

Plaintiff claims that two of Defendant's employees contacted her via text messages on her mobile phone in March 2009.  Jeff Morton allegedly invited her to play basketball at Defendant's club on a Saturday evening.  Compl. Ex. C at 4.  Plaintiff further alleges that a few days later, an employee identified only as "Eboni" contacted her.  *Id.*  Plaintiff replied to both employees, questioning their sincerity, and claims that by the following morning, the text messages had disappeared from her phone.  *Id.*  Plaintiff reported this incident to the Canton Police on March 7, 2009.  *Id.*  The police contacted Eboni, who explained that Plaintiff had inquired about joining a basketball league, and promised to cease further contact.  Compl. Ex. B.  Canton Police closed the investigation, finding that no crime had been committed.  *Id.*  Plaintiff alleges that Morton has since "gone out of his

---

[1] Unless otherwise specified, the Complaint referred to throughout this Opinion and Order is Plaintiff's Third Amended Complaint, filed pursuant to leave of the Court on September 8, 2010.

way to appear in Plaintiff's line-of-sight when she is at Defendant's center."  Compl. ¶ 12.

In approximately October 2009, Vincent Orsini became the General Manager of Defendant's Canton health club.  Plaintiff claims that Orsini encouraged employees to harass and intimidate her.  *Id.* ¶ 8.  She alleges that Defendant's employees laughed at her, made degrading comments to her, made "sarcastic inquiries" as to how she was doing, forced and staged interactions with her, and used devices to observe her activities.  *Id.* Plaintiff alleges that because she is African-American, Defendant specifically recruited African-American employees to engage in these behaviors in order to mask discriminatory intent.  *Id.* ¶ 9.

On November 3, 2009, Plaintiff purchased two additional fitness exams from Defendant.  She alleges that Defendant provided "illegitimate results" for these exams, recommending that she consume 3,500 calories per day and exercise at a higher heart rate to achieve her weight loss goals.  *Id.* ¶ 14-15.  Plaintiff complained to Orsini about these results and demanded a refund.  She claims that Orsini refused.  *Id.* ¶ 16.

On November 20, 2009, Plaintiff filed this suit in the Small Claims Division of Michigan's 35th District Court.  She alleged that Defendant harassed her by providing "fraudulent fitness advice so she would gain weight," having employees and others "stalk her," and having staff "aggressively greet her so as to intimidate her."  Compl. Ex. H.

On December 3, 2009, Plaintiff entered Defendant's Canton club and claims that Jamie Kazzanowski, an employee at the front desk, sarcastically yelled to her, "have a nice workout!"  Compl. ¶ 18.  Plaintiff alleges that she asked Kazzanowski not to speak with her again.  *Id.*  Defendant claims that Plaintiff pointed her finger at Kazzanowski and said

3

in a threatening manner, "don't talk to me when I come into the club . . . you know what I mean." Def.'s Br. Supp. Mot. Summ. J. 2.

Plaintiff alleges that throughout December 2009, Defendant's employees continued their sarcastic behavior, asking her questions such as how she was doing, or if she was "hanging on by a thin thread." Compl. ¶ 19. On December 20, 2009, Plaintiff sent Orsini an e-mail containing vague allegations of racially discriminatory behavior by Defendant's staff. Compl. Ex. I. The only specific misconduct alleged was a towel attendant's speaking to Plaintiff when he was apparently directed not to do so. *Id.* On January 1, 2010, Plaintiff contacted another employee, Connie Scaparo, and asked Scaparo not to speak to her or purposefully appear in her line of sight. Def.'s Br. Supp. Mot. Summ. J. Ex. K. Plaintiff also asked Scaparo to tell Defendant's yoga instructors not to walk over to her and instruct her during classes. *Id.*

On January 7, 2010, Plaintiff sought leave to amend her original Complaint and at that same time "filed" with the court her proposed Amended Complaint. In her proposed Amended Complaint, Plaintiff sought to add a claim arising under the Civil Rights Act of 1866, 42 U.S.C. § 1981. On February 17, 2010, the 35th District Court held a hearing on the motion to amend, and granted the motion. The Court also entered a scheduling order. That same day, Defendant elected to terminate Plaintiff's membership pursuant to the terms of the Membership Usage Agreement. Defendant sent Plaintiff a letter explaining:

> Life Time has determined that you have engaged in conduct in its Canton club
> that is improper or contrary to Life Time's best interests, including acting in an
> inappropriate or threatening manner toward various Life Time employees,

4

making unsubstantiated claims of harassment and stalking against various Life Time employees, demanding that Life Time employees act contrary to the company's customer-focused mission when interacting with you, impeding the ability of Life Time employees to satisfactorily perform their job functions, and violating the terms of your myLT.com Use Agreement. Accordingly, your membership with Life Time has been terminated.

Pl.'s Br. Opp'n Summ. J. Ex. E. Defendant terminated Plaintiff's membership effective

February 17, 2010, refunding the unused portion of her monthly membership fee. *Id.*

Plaintiff responded in an e-mail message to Orsini on February 19, 2010, asserting

that because of pending litigation, Defendant could not terminate her membership. Def.'s

Br. Supp. Mot. Summ. J. Ex. L. Defendant's counsel responded via mail and e-mail in a

message dated February 19, 2010, stating in part:

> Your pending lawsuit in the 35th District Court has no bearing on whether or not Life Time Fitness can terminate your membership pursuant to the terms of your Membership Usage Agreement, which you agreed to when you joined the club. Your Member Usage Agreement clearly provides that Life Time Fitness may terminate your membership at any time "for conduct Life Time Fitness determines to be improper or contrary to the best interests of Life Time Fitness." Mr. Orsini's letter clearly sets forth the factual basis (your improper conduct) and the contractual basis (the involuntary termination provision in your Member Usage Agreement) for Life Time's termination of your membership.
>
> Contrary to your characterization of it, Mr. Orsini's letter was not a "request" to stop using the club. Your membership has been terminated. You are no longer permitted to enter Life Time's premises as a member, guest or in any other status. You are no longer a business invitee of Life Time, such that your entry onto its premises will constitute trespassing. If you attempt to use the premises, you will be denied access and requested to leave. While your email states that you have "no intention of honoring" your termination, I ask that you kindly and carefully reconsider your threat to continue using the club, so as to avoid any issues related to your attempt to obtain access to any Life Time Fitness club.

Def.'s Br. Supp. Mot. Summ. J. Ex. M. Plaintiff entered Defendant's Canton club the

following day, February 20, 2010.  Defendant's employees requested that Plaintiff leave

the premises, but she refused.  Defendant's employees contacted Canton police, who also

asked Plaintiff to leave the premises.  After Plaintiff refused, Canton police arrested her

and ticketed her for trespassing.  Compl. Ex. O.

　　　Plaintiff received an e-mail from "lifetimefitness@emails.lifetimefitness.com" on

February 26, 2010, stating:

> Join Life Time Fitness now and receive 4 personal training sessions - 2
> sessions when you sign up + 1 session at 6 months + 1 session at 12
> months.  Plus, pay $0 enrollment fee now through Sunday, February 28th.

Pl.'s Br. Opp'n Summ. J. Ex. W.  The signature at the end of the e-mail stated that it was

from Anthony Vitale, Member Advisor of Defendant's Canton club.  *Id.*  Plaintiff returned

to the club on February 27, 2010 and filled out a membership application.  Defendant's

employees soon realized that Plaintiff was in the building and asked her to leave.  She

refused, and was again arrested by Canton Police for trespassing.  Compl. Ex. R.  The

charge was dismissed due to the possibility that Defendant inadvertently scheduled the

appointment.  Defendant stated that it would remove Plaintiff from its e-mail lists.  *Id.*

　　　On Sunday, February 28, 2010, Plaintiff sent an e-mail to Defendant's counsel

indicating her intent to join Defendant's club in Novi, Michigan.  Later that day, Plaintiff

entered the Novi club.  The general manager of the club asked Plaintiff to leave.  Plaintiff

left the facility, and responded in a letter to Defendant's counsel dated March 12, 2010,

demanding that Defendant cease and desist from excluding her from its clubs.  Compl. Ex.

S.  She also e-mailed Vitale and Defendant's counsel that day, stating her intention to

enter the club around 6 or 7 p.m. to purchase a membership.  Compl. Ex. T.  Defendant's

counsel replied, stating that any attempt to enter the club would be considered a trespass, and that law enforcement authorities would be contacted. Def.'s Br. Supp. Mot. Summ. J. Ex. S. Plaintiff claims that she received this reply after she attempted to re-enter Defendant's club. Plaintiff attempted to enter the Canton club on March 12, 2010, and was again arrested for trespass by the Canton Police.

Plaintiff removed her lawsuit to Wayne County Circuit Court to seek injunctive relief, and Defendant removed the case to this Court on March 15, 2010, on grounds that the Amended Complaint presented a federal question. Plaintiff moved to remand, and this Court denied her motion in an Opinion and Order dated July 8, 2010. Defendant has now moved for dismissal or summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

The Complaint asserts the following claims: (1) racial and gender discrimination in violation of the Elliott-Larsen Civil Rights Act, Michigan Compiled Laws § 37.2101 *et seq.* ("ELCRA"), 42 U.S.C. §§ 1981 and 2000a(a), and Michigan common law; (2) false arrest, false imprisonment, and malicious prosecution; (3) intentional and reckless infliction of emotional distress; (4) premises liability; (5) defamation and invasion of privacy; (6) breach of contract; (7) fraud; (8) violations of Plaintiff's freedom of association under the First Amendment to the United States Constitution and due process rights under the United States and Michigan Constitutions; and (9) civil stalking. Plaintiff seeks injunctive and declaratory relief, damages of $631,550.00, attorney's fees, and costs.

## II. Standards of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

7

legal sufficiency of the complaint.  *RMI Titanium Co.*, 78 F.3d at 1134 (6th Cir. 1996).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  As the Supreme

Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).  The plausibility standard "does not impose

a probability requirement at the pleading stage; it simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*,

550 U.S. at 556, 127 S. Ct. at 1965.

    In deciding whether the plaintiff has set forth a "plausible" claim, the court must

accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*,

551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).  This presumption, however, is not

applicable to legal conclusions.  *Iqbal*, 129 S. Ct. at 1949.  Therefore, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65).  Ultimately,

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense."  *Id.* at 1950.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

9

**A. Discrimination and Retaliation Claims**

The Complaint asserts claims of racial and gender discrimination in violation of the

ELCRA, 42 U.S.C. §§ 1981 and 2000a(a), and Michigan common law.[2]  Federal statute

prohibits discrimination on the basis of race:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Title II of the Civil Rights Act of 1964 also prohibits discrimination

on the basis of race: "All persons shall be entitled to the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, and accommodations of any place of

public accommodation . . . without discrimination or segregation on the ground of race,

color, religion, or national origin."  42 U.S.C. § 2000a(a).

Michigan statute prohibits discrimination on the basis of a number of characteristics.

Under the ELCRA, a person may not "[d]eny an individual the full and equal enjoyment of

the goods, services, facilities, privileges, advantages, or accommodations of a place of

public accommodation or public service because of religion, race, color, national origin,

age, sex, or marital status."  Michigan Compiled Laws § 37.2302(a).  A "place of public

accommodation" includes recreation and health facilities whose services are offered to the

public, as well as private sports or athletic clubs.  Michigan Compiled laws § 37.2301(a).

---

[2] The Complaint does not specify the legal theory or theories upon which Plaintiff's
claims under Michigan common law are based.

Plaintiff has not alleged conduct that would allow a reasonable jury to conclude that she was denied the full and equal enjoyment of Defendant's facilities based on her race or gender.  The alleged statements of Defendant's employees do not indicate that either race or gender motivated their actions or decisions.  In support of her discrimination claim, Plaintiff offers only her belief that race and gender motivated the alleged harassment:

> It is believed that if Plaintiff was white, much of Defendant's harassing actions would not have occurred or Defendant's actions would have been drastically different. It is also believed that if Plaintiff were a Mr. Downing instead of a Ms. Downing much of Defendant's harassing actions would not have occurred or Defendant's actions would have been drastically different.

Compl. ¶ 9.  Such beliefs are plainly insufficient to establish liability.

Plaintiff attempts to prove her case through circumstantial evidence, relying on the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  The *McDonnell Douglas* analysis is properly applied to Plaintiff's discrimination claims.  *See Gold v. FedEx Freight E., Inc.*, 487 F.3d 1001, 1008 (6th Cir. 2007); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).  Under this framework, to state a prima facie case of discrimination, Plaintiff must show that: (1) she belonged to a protected class; (2) she sought to make a contract for services ordinarily provided by Defendant; and (3) she was denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not, or she was treated in such a markedly hostile manner that a reasonable person would find it objectively discriminatory.  *Keck v. Graham Hotel Sys.*, 566 F.3d 634, 639 (6th Cir. 2009).

Plaintiff has failed to introduce any evidence that would satisfy the third element of her prima facie case.  She admitted at the hearing that she cannot point to any person who

was treated differently than she was.  Plaintiff has also failed to allege markedly hostile conduct that a reasonable person could conclude was objectively discriminatory.  A party's actions rise to the level of markedly hostile if they are: "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination."  *Id.* (quoting *Christian*, 252 F.3d at 871). Plaintiff alleges that Defendant's employees greeted her, spoke to her, and instructed her during classes.  Defendant's employees contacted her about playing basketball and were often visible throughout Defendant's club.  Plaintiff also claims that Defendant provided her with inaccurate fitness exam results.  The Court cannot conclude that the alleged conduct is far outside of business norms or that it is so arbitrary that it supports a rational inference of discrimination.  Plaintiff argues that Defendant's employees acted with sarcastic intent, but she must establish that she was *treated* in a hostile manner to make her prima facie case.  Plaintiff has not introduced any evidence demonstrating hostile treatment.  While Defendant's employees may have harbored sarcastic intent toward Plaintiff, such intent is insufficient for the Court to infer discrimination.

Even if Plaintiff could establish a prima facie case of discrimination, Defendant has shown that the alleged conduct serves a legitimate nondiscriminatory purpose.  Defendant has explained that it expects its employees to routinely interact with members to promote a friendly atmosphere in its health clubs.  Accordingly, the Court concludes that Plaintiff cannot prevail under the *McDonnell Douglas* burden-shifting framework.  Defendants must be granted summary judgment on the discrimination claims.

12

Plaintiff argues that her membership was terminated in retaliation for the filing of this lawsuit. The ELCRA prohibits retaliation against a person who opposes any violation of the statute. Michigan Compiled Laws § 37.2701(a). To prevail in a retaliation claim, a plaintiff must establish: (1) that she engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse action. *Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 315, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001). To establish causation, the plaintiff must show that participation in a protected activity was a "significant factor" in the adverse action, not just that there was a causal link between the two. *Id.* at 315, 628 N.W.2d at 70.

Plaintiff cannot show that the filing of this lawsuit caused the termination of her membership. She claims that "milestones" in this litigation correspond with Defendant's decision to terminate her membership. Plaintiff argues that Defendant threatened to terminate her membership on January 4, 2010, the date her case was transferred to the 35th District Court's general civil docket. Plaintiff notes that Defendant sent the termination letter on February 17, 2010, the same date that a hearing was held on her motion to amend. These are merely procedural events, and fail to establish that the filing of this lawsuit was a significant factor in the decision to terminate Plaintiff's membership. It is undisputed that Plaintiff used Defendant's facility for approximately three months while this litigation was pending. Furthermore, while Plaintiff alleged discriminatory conduct in December 2009, Defendant did not elect to terminate her membership until February 17, 2010. It is therefore implausible for Plaintiff to assert that her discrimination claims were a

13

significant factor in the termination of her membership.  The Court accordingly grants

summary judgment for Defendant with respect to Plaintiff's retaliation claim.

## B. Breach of Contract Claims

Plaintiff alleges that Defendant breached a contractual obligation to provide her with

access to its facilities, and even if Defendant had the right to terminate her membership, it

did so in bad faith.  Compl. ¶ 62.  Undisputed evidence before this Court shows otherwise.

Plaintiff filed police reports against several of Defendant's employees based on seemingly

innocent conduct and confronted employees for speaking to her or appearing in her line of

sight.  Defendant apparently determined that this conduct was not in its best interests, and

the Court cannot see how a reasonable jury could find bad faith under these facts.

Summary judgment is appropriate with respect to the bad faith termination claim.

Plaintiff claims that Defendant breached a contract by providing inaccurate results

for two fitness exams conducted during November 2009.  Compl. ¶ 63.  Plaintiff cites a

document entitled "Plaintiff's Memorandum on Defendant's Fitness Exams" as evidence

that the results provided were inaccurate.  *See* Pl.'s Br. Opp'n Summ. J. Ex. P.  Defendant

objects to Plaintiff's use of this document, asserting that it is entirely inadmissible.  "A

party may object that the material cited to support or dispute a fact cannot be presented in

a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "The burden is on

the proponent to show that the material is admissible as presented or to explain the

admissible form that is anticipated."  Fed. R. Civ. P. 56 advisory committee's notes, 2010

amendments.  The "Memorandum" contains only Plaintiff's own analysis, interpretations,

and opinions regarding Defendant's fitness exams.  Lay witnesses, however, cannot testify

14

based on scientific, technical, or other specialized knowledge.  Fed. R. Evid. 701.  Plaintiff

has not shown that she possesses expertise in performing or analyzing the fitness exams at

issue.  Her opinions as to the validity of the examination results are mere speculation and

not properly considered by this Court.  Plaintiff's Memorandum therefore cannot raise a

genuine dispute of material fact as to the validity of the fitness exam results.  Because

Plaintiff has not offered any admissible evidence indicating that she was provided with

fraudulent results, the Court must grant summary judgment for Defendant on this claim.

**C. Fraud Claim**

   Plaintiff alleges that Defendant's provision of inaccurate results with respect to the

two fitness exams constitutes "actual and constructive fraud."  Compl. ¶ 67.  For the

reasons stated above, the Court concludes that no admissible evidence supports Plaintiff's

fraud claim, and grants summary judgment for Defendant.

**D. False Arrest, False Imprisonment, and Malicious Prosecution Claims**

   Plaintiff alleges that Defendant caused her to be arrested for "unmerited claims of

trespass," despite her "lawful authority to patronize . . . Defendant's facilities."  Compl. ¶¶

38-39.  "An action for false arrest cannot be maintained where the arrest is legal even if

the person arrested is in fact innocent."  *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212,

218 n.2, 327 N.W.2d 893, 894 n.2 (Mich. 1982).

> One who instigates or participates in a lawful arrest, as for example an arrest
> made under a properly issued warrant by an officer charged with the duty of
> enforcing it, may become liable for malicious prosecution . . . or for abuse of
> process . . . but he is not liable for false imprisonment, since no false
> imprisonment has occurred.

*Id.* (quoting Restatement (Second) of Torts § 45A cmt. b).  "It is not enough for instigation

that the actor has given information to the police about the commission of a crime . . . so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Id.* at 219 n.3, 327 N.W.2d at 895 n.3 (quoting Restatement (Second) of Torts § 45A cmt. c). Defendant cannot be liable for false arrest under these facts. Plaintiff admits that she was arrested by Canton police officers, and does not dispute that Defendant's employees called the police to give them information about the alleged trespass. The police officers had the authority to arrest Plaintiff for what they believed was a criminal act, even if she were actually entitled to enter Defendant's property. Although Defendant's employees provided the police with information that led them to arrest Plaintiff, there is no indication that the police officers failed to exercise their own judgment in arresting her.

Plaintiff has also asserted a malicious prosecution claim. To prevail on this claim, Plaintiff must establish: (1) that the defendant has initiated a criminal prosecution against her, (2) that the criminal proceedings terminated in her favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Matthews v. Blue Cross Blue Shield*, 456 Mich. 365, 378, 572 N.W.2d 603, 609-10 (Mich. 1998).

Plaintiff cannot establish the third element, lack of probable cause. "[T]he plaintiff's burden . . . is to make a prima facie showing that the defendant's agents lacked probable cause to believe that the plaintiff had committed a crime." *Id.* at 379, 572 N.W.2d at 610. "The jury resolves factual disputes regarding the circumstances under which the private

person who initiates, procures, or maintains a prosecution might be found to have acted without probable cause." *Id.* at 382, 572 N.W.2d at 611. "Whether the facts constitute probable cause is a matter for the court to determine." *Id.* at 382, 572 N.W.2d at 611. "[T]he question of probable cause is an objective test that 'involves only the conduct of a reasonable man under the circumstances.'" *Id.* at 387, 572 N.W.2d at 614 (quoting *Koski v. Vohs*, 426 Mich. 424, 432, 395 N.W.2d 226, 230 (Mich. 1986)). Probable cause requires "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged." *Id.* at 387, 572 N.W.2d at 614 (quoting *Wilson v Bowen*, 64 Mich. 133, 138, 31 N.W. 81, 83 (Mich. 1887)).

Even accepting the evidence in a light most favorable to Plaintiff, the Court cannot conclude that Defendant's employees lacked probable cause to believe that Plaintiff was trespassing. Defendant sent Plaintiff a letter stating her that her membership had been terminated, and it is undisputed that only members may access Defendant's facilities. Defendant's employees learned that Plaintiff was inside the facility and were obviously aware of the termination of her membership. Under these circumstances, it was reasonable to conclude that Plaintiff was trespassing. Plaintiff argues that Defendant's employees acted in retaliation for her filing this suit. Where probable cause is found, however, "the actual motive behind the complaint may not be relevant," as "[w]ant of probable cause may not be inferred from malice." *Id.* at 378, 572 N.W.2d at 610 n.14.

Plaintiff asserts that probable cause was lacking, as criminal prosecution for trespass is not actionable unless there has been a breach of peace. As authority for this proposition,

Plaintiff cites *Bouie v. City of Columbia*, 378 U.S. 347, 84 S. Ct. 1697 (1964).  In *Bouie*,

an alleged trespasser was prosecuted under South Carolina law.  Plaintiff quotes the

following statement: "Unless a trespass is 'committed under such circumstances as to

constitute an actual breach of the peace, it is not indictable at common law, but it is to be

redressed by a civil action only.'"  *Id.* at 358, 84 S. Ct. at 1705.  Plaintiff was not arrested

for common law trespass, but rather, for violation of Michigan's trespass statute, which

provides:

> A  person shall not do any of the following:
>
> (a) Enter the lands or premises of another without lawful authority after having
> been forbidden so to do by the owner or occupant or the agent of the owner or
> occupant.
>
> (b) Remain without lawful authority on the land or premises of another after
> being notified to depart by the owner or occupant or the agent of the owner or
> occupant.

Michigan Compiled Laws § 750.552.  Breach of the peace is not an element of this statute.

Because Defendant's employees had probable cause to believe that Plaintiff had violated

this statute, a reasonable jury could not find Defendant liable for malicious prosecution.

### E. Intentional and Reckless Infliction of Emotional Distress Claims

The Complaint alleges that "Defendant's actions in harassing Plaintiff, diminishing

Plaintiff's reputation, pursuing unmerited claims of trespass against Plaintiff, and refusing

to service or contract with Plaintiff were such to either intentionally and/or recklessly

cause Plaintiff extreme emotional distress."  Compl. ¶ 44.  To prevail on this claim,

Plaintiff must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3)

causation; and (4) severe emotional distress.  *Jones v. Muskegon Cnty.*, 625 F.3d 935, 948

(6th Cir. 2010).  The conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  *Id.* (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)).

> It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.  In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Id.* (quoting *Graham*, 237 Mich. App. at 674, 604 N.W.2d at 716) (citations omitted).

Plaintiff asserts that Defendant's employees harassed her by sarcastically greeting her and frequently appearing in her line of sight while she was at Defendant's club.  Even if Defendant's employees carried out their tasks with sarcastic intent, the Court cannot conclude that sarcasm rises to the level of "extreme and outrageous" conduct.

Plaintiff claims that Jeff Morton's invitation to play basketball at night constitutes harassment.  Plaintiff has admitted, however, that she may have invited Morton to play basketball and that she had given him a business card to contact her.  Downing Dep. 156:12-17, Oct. 26, 2010.  Plaintiff suspects that Morton may have removed text messages from her phone, but offers no evidence of wrongdoing, and did not even ask Morton if he was involved in the disappearance of these text messages.  Downing Dep. 158:1-4.  The Court concludes that there is no evidence of extreme or outrageous conduct by Morton.

Plaintiff claims that one of Defendant's employees told her that he was an "assassin."

19

Downing Dep. 179:20-25.  Plaintiff does not allege that this employee said anything else to her, but only that he would "routinely appear in her line of sight" during her nighttime workouts.  Downing Dep. 180:14-15.  This employee could have intended to frighten Plaintiff, but a reasonable jury could not conclude that his conduct was "atrocious and utterly intolerable in a civilized community."

Plaintiff alleges that she was "mocked" when she was arrested for trespass.  Pl.'s Br. Opp'n Summ. J. 34.  Her deposition testimony undermines the characterization of this behavior as extreme and outrageous.  Plaintiff stated that when she was arrested, an employee named Kelvin was "strolling into the facilities as if he had been invited back."  Downing Dep. 246:22-247:1.  Even if this employee acted in a manner so as to mock Plaintiff, the Court cannot conclude that his behavior was extreme and outrageous.

Plaintiff accuses Defendant's employees of stealing her flip-flops from a locker room, but her deposition indicates that she is unsure of who took them.  Downing Dep. 227:14-18.  Again, even if Plaintiff offered evidence indicating that Defendant's employees were responsible, such petty theft cannot be considered outrageous.

Finally, Plaintiff contends that during a raffle, Defendant's yoga instructor threw away a winner's name.  Plaintiff believes that her name was the one picked and thrown out, although she has no evidence to support this assertion.  Downing Dep. 226:2-7.  Even if Plaintiff had evidence supporting this claim, the Court cannot conclude that depriving a would-be winner of a raffle prize constitutes extreme and outrageous conduct under Michigan law.  Because extreme and outrageous conduct has not been pleaded, much less established through evidence, Plaintiff's emotional distress claim must fail.

20

**F. Premises Liability Claim**

Plaintiff claims that Defendant owes its customers a duty "to at least maintain the premises in a condition that is reasonably safe." Compl. ¶ 46. Plaintiff alleges that Defendant breached this duty by: "enabling . . . employees, agents and third parties to diminish Plaintiff's ability to enjoy their offered services, facilities and accommodations[,] . . . terminating Plaintiff's membership, refusing to enter into a new membership agreement with Plaintiff and having Plaintiff ticketed and arrested for trespass." *Id.* ¶ 47.

"Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Mann v. Shusteric Enters.*, 470 Mich. 320, 328, 683 N.W.2d 573, 577 (Mich. 2004). Plaintiff does not complain that she was harmed by a dangerous condition on the land. Instead, she claims reputational or emotional harm as a result of the alleged actions of Defendant's employees. The Court is unaware of any legal authority extending premises liability to include purely emotional harm. Plaintiff alleges: "Defendant also has a duty to exercise reasonable care to warn and/or protect Plaintiff against harmful actions of third parties." Compl. ¶ 46 (citing Restatement (Second) of Torts § 344). Section 344 of the Restatement, however, restricts such liability to "physical harm" caused by the acts of third parties. The Restatement makes no mention of premises liability for purely emotional harms.

Plaintiff cites *Kroll v. Katz*, 374 Mich. 364, 132 N.W.2d 27 (Mich. 1965), for the proposition that "[w]hen either intentional infliction of emotional distress or civil stalking is established such behavior constitutes a 'defect on the property' sufficient to establish

breach of a shopkeeper's duty of reasonable care."  Pl.'s Br. Opp'n Mot. Summ. J. 33.  In

*Kroll*, the plaintiff repairman fell down a staircase in the defendant's home when a step

cracked underneath him.  374 Mich. at 366, 132 N.W.2d at 28.  The plaintiff complained

of physical injuries to his ankle, back, and head.  *Id.* at 366, 132 N.W.2d at 28.  The case

involved neither emotional injury nor a civil stalking claim.  The Court rejects Plaintiff's

mischaracterization of *Kroll*, and concludes that reputational and emotional harm cannot

support a premises liability claim.  Plaintiff has pleaded no physical harm resulting from a

dangerous condition on the land; her claim therefore fails as a matter of law.

**G. Defamation and Invasion of Privacy Claims**

Plaintiff alleges that "Defendant used devices to surveillance Plaintiff while at their

centers without Plaintiff's knowledge or permission."  Compl. ¶ 51.  A plaintiff asserting a

claim for invasion of privacy must show: (1) an intrusion by the defendant (2) into a

matter in which the plaintiff has a right of privacy (3) by a means or method that is

objectionable to a reasonable person.  *Saldana v. Kelsey-Hayes Co.*, 178 Mich. App. 230,

233, 443 N.W.2d 382, 383 (Mich. Ct. App. 1989).  Defendant has denied that any audio or

video recording devices were in use at the Canton club while Plaintiff was a member.

Def.'s Br. Supp. Mot. Summ. J. Ex. V ¶ 24.  As Plaintiff has not offered any evidence

indicating otherwise, her claim fails.

In her brief, Plaintiff alleges that Defendant's employees broke into her locker and

deleted text messages.  The Court notes that the Complaint did not raise this claim.  Even

so, summary judgment is warranted because Plaintiff's testimony undermines her claim.

Plaintiff admitted that she does not know how the text messages disappeared.  Downing

Dep. 157:16. Plaintiff apparently concluded that Defendant's employees deleted the messages based on the fact that her cellular carrier, T-Mobile, was unable to provide her with an explanation that she deemed "satisfactory." Downing Dep. 157:18-23. Plaintiff bears the burden of showing that Defendant invaded her privacy, and mere speculation cannot satisfy that burden. As there is no evidence indicating that Defendant's employees deleted Plaintiff's text messages, the Court must grant summary judgment for Defendant on the invasion of privacy claim.

Plaintiff asserts that Defendant made defamatory statements about her in a letter dated February 17, 2010. Compl. ¶ 53. To state a defamation claim under Michigan law, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 308 (6th Cir. 1998). Defendant maintains that the letter was sent only to Plaintiff, and was never published to a third party. The Complaint states that "[u]pon information and belief, Defendant communicated these statements to third parties." Compl. ¶ 56. Plaintiff, however, has failed to identify any instances of publication. Plaintiff bears the burden of showing publication, yet has offered no evidence to support this element of her claim.

Plaintiff alleges that Vincent Orsini's affidavit, filed in opposition to Plaintiff's Motion for Preliminary Injunction, contained false and defamatory statements. *Id.* at ¶ 55. Defendant asserts that these statements are not subject to a defamation claim, as they are

absolutely privileged.  "An absolutely privileged communication is one for which, by reason of the occasion on which it is made, no remedy is provided for the damages in a civil action for slander or libel." *Schlinkert v. Henderson*, 331 Mich. 284, 290, 49 N.W.2d 180, 183 (Mich. 1951).  "Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried." *Maiden v. Rozwood*, 461 Mich. 109, 134, 597 N.W.2d 817, 830 (Mich. 1999). This includes statements made in pleadings filed in the action that are relevant to the case. *Bennett v. Attorney Gen. of Mich.*, 65 Mich. App. 203, 206, 237 N.W.2d 250, 252 (Mich. Ct. App. 1975).  The statements in the affidavit rebutted Plaintiff's claims of harassment and bad faith termination of her membership.  They were absolutely privileged, and are not actionable in a defamation claim.

In her brief, Plaintiff accuses Defendant's employees of spreading rumors that she used Defendant's facility to "gain business" and that she could not afford Defendant's fifty-nine dollar monthly membership fee.  These claims were not raised in the Complaint, but even so, they fail as a matter of law because Plaintiff has failed to plead or establish special damages.  Plaintiff argues that these statements are *per se* defamatory, as they implicate the viability of her law practice, but the Court disagrees.  The suggestion that Plaintiff might wish to engage in fitness activities in a setting that might benefit her business does not in any way disparage the viability of Plaintiff's law practice.  Likewise, Plaintiff's ability to afford Defendant's monthly membership fee has nothing to do with the viability of her law practice.  Even individuals with thriving legal practices might find themselves unable to spend fifty-nine dollars on a health club membership if they have

committed their income to other purposes.  The Court cannot conclude that statements concerning Plaintiff's ability to afford a health club membership constitute defamation *per se*, and because no special damages have been pleaded, Plaintiff's defamation claim fails.

## H. Due Process and First Amendment Claims

Plaintiff claims that Defendant caused her to be arrested for trespass, in violation of her freedom of association under the First Amendment to the United States Constitution. Compl. ¶ 70.  Plaintiff alleges that her due process rights were violated, as she "was not given a single hearing, with notice by an impartial tribunal before her membership was terminated." *Id.*  Plaintiff's brief clarifies that her claim is based on 42 U.S.C. § 1983.

A § 1983 plaintiff must establish that: (1) she was deprived of a right, privilege, or immunity secured by the Federal Constitution or federal law, and (2) the deprivation was caused by a person acting under color of state law.  *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 1733 (1978).  Plaintiff has failed to satisfy either requirement.

Plaintiff has not pleaded facts upon which this Court could conclude that Defendant or its employees acted "under color of state law" in arresting her.  Plaintiff argues that Defendant used Canton police officers to limit her freedom of association.  "However, 'the mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983.'"  *Goodell v. Anthony*, 157 F. Supp. 2d 796, 800 (E.D. Mich. 2001) (quoting *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir. 1987)).  Plaintiff does not dispute that Defendant's employees called the Canton police to inform them of an alleged trespass.  This conduct is not actionable under § 1983.

25

Plaintiff has also failed to establish that she was deprived of a federal right. Plaintiff contends that Defendant limited her freedom of association by excluding her from its club. The First Amendment protects the freedom of association in two distinct senses. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544, 107 S. Ct. 1940, 1945 (1987). First, it protects against unjustified government interference with an individual's choice to enter into and maintain intimate or private relationships. *Id.* Second, it protects an individual's right to associate for the purpose of engaging in protected speech or religious activities. *Id.* Plaintiff has not demonstrated that membership in Defendant's club entails the sort of intimate and private relationship that is afforded First Amendment protection. The freedom of association typically does not apply to large business enterprises. *Roberts v. United States Jaycees*, 468 U.S. 609, 620, 104 S. Ct. 3244, 3251 (1984). Defendant claims that its Canton club has thousands of members, and Plaintiff has not disputed this. Plaintiff has not alleged that her purpose in joining Defendant's club was to engage in religious activities or protected speech; rather, she maintains that her goal was to improve her fitness. Because Plaintiff's alleged right to associate at Defendant's club is not subject to First Amendment protection, her claim fails.

Plaintiff asserts that Canton Police Department employees refused to document claims relating to Jeff Morton in a police report or later altered the report to remove any reference to Morton. She contends that this violated her freedom of speech under the First Amendment. Neither the Canton Police Department nor its employees are defendants in this action. Plaintiff has not identified any basis upon which Defendant can be held liable for the Canton Police Department's modification of its own police reports.

26

Plaintiff argues that her due process rights have been violated, as she was not given a hearing before an impartial tribunal before her membership was terminated. Defendant asserts that the right to be a member of its club is not protected by the Due Process Clause, and the Court agrees. To establish her Due Process claim, Plaintiff must first show that she possessed a protected property interest. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Only after such a right is identified does the Court consider whether the deprivation of that interest contravened the notions of due process. *Id.*

> Even though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution; nor may individuals manufacture a property interest. Unilateral expectations of a property interest are insufficient to trigger due process concerns. Instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 529 n.1, 101 S. Ct. 1908, 1910 n.1 (1981)). Plaintiff has no property interest in a membership at Defendant's club. No existing rule or understanding requires Defendant to offer Plaintiff a membership to its club; indeed, the parties' contract provides Defendant with the express right to terminate her membership. The Court is unaware of any statute or ordinance requiring Defendant to offer Plaintiff a membership. Plaintiff's expectation that she will be allowed to purchase a membership does not establish an entitlement to do so. Because Plaintiff has failed to establish that a protected property interest is at issue, the Court need not consider whether she was deprived of that interest without due process.

**I. Civil Stalking Claim**

27

Plaintiff alleges that "Defendant's employees engaged in willful conduct involving repeated or continuing harassment of Plaintiff that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, and/or harassed." Compl. ¶ 76. Michigan's civil stalking statute provides: "A victim may maintain a civil action against an individual who engages in conduct that is prohibited under section 411h or 411i of the Michigan penal code." Michigan Compiled Laws § 600.2954(1). The statute defines "stalking":

> "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Michigan Compiled Laws § 750.411h(d). The statute also defines "harassment":

> "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

Michigan Compiled Laws § 750.411h(c).

The Court cannot conclude that Defendant is liable for stalking under Michigan law. The Court believes that a reasonable person would not feel "intimidated" or "terrorized" by the alleged conduct of Defendant's employees, which consisted mainly of sarcastic greetings and appearing in Plaintiff's line of sight. Plaintiff's actions indicate that she was not actually frightened or intimidated; rather, she confronted Defendant's employees openly and often to demand that they cease interacting with her. Furthermore, the alleged conduct does not constitute harassment under the statute. "Harassment does not include . . . conduct that serves a legitimate purpose." Michigan Compiled Laws § 750.411h(c).

28

Although Plaintiff did not consent to continued interaction with Defendant's employees, these interactions served a legitimate purpose. Defendant operates large health clubs, and its employees can reasonably be expected to be visible within the various areas of those clubs. These employees can be expected to serve a number of functions, such as greeting customers, conducting training classes or activities, ensuring proper use of the facilities, and addressing customers' requests. The conduct alleged by Plaintiff is practically indistinguishable from what could be expected of an average employee at a health club like Defendant's. The Court cannot reasonably find that employees' continued presence throughout Defendant's facility constitutes harassment. The Court therefore grants summary judgment for Defendant on Plaintiff's civil stalking claim.

## IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Kristy J. Downing, Esq.
Anthony J. Kostello, Esq.